UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUSTIN CHARLES THAYER,            )
                                  )
                    Plaintiff     )
                                  )
                                  )
          v.                      )   Civil Action No. 13-30131-KPN
                                  )
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social     )
Security Administration,          )
                                  )
                    Defendant     )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and
DEFENDANT'S MOTION FOR JUDGMENT AFFIRMING
THE COMMISSIONER'S DECISION
(Document Nos. 14 and 23)
October 31, 2014

NEIMAN, U.S.M.J.

Justin Charles Thayer ("Plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Presently before the court is Plaintiff's motion for judgment on the pleadings and the Commissioner's motion to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); FED. R. CIV. P. 73. For the following reasons, the court will deny Plaintiff's motion for judgment on the pleadings and, accordingly, allow the Commissioner's motion to affirm.

I. D<span style="font-variant:small-caps">iscussion</span>

The parties are well aware of the factual and procedural history of this case, the standard of review, and the applicable five-step sequential analysis.

Plaintiff asserts that the administrative law judge ("ALJ") committed three substantial errors. First, Plaintiff questions the ALJ's residual functioning capacity ("RFC") assessment, which, he says, suffers from missteps made when assigning little if any weight to Plaintiff's treating sources and, in any event, lacks sufficiently detailed factual support. Second, Plaintiff takes issue with the ALJ's credibility determination, which he argues is not adequately supported. Third, Plaintiff objects to the ALJ's reliance on the testimony of the Vocational Expert ("VE"), not only because it was based on what Plaintiff believes to be an inappropriate RFC but because it failed to fully account for the limitations the ALJ actually identified.

For her part, the Commissioner asserts that the ALJ's RFC and credibility assessments were supported by substantial evidence and, accordingly, the VE testimony was based on a proper analysis and did not need to reflect limitations identified in the ALJ's preliminary findings. For the following reasons, the court agrees with the Commissioner.

A. RFC Assessment

*1. Treating Physicians*

Underlying Plaintiff's RFC challenge is his argument that the ALJ improperly and insufficiently analyzed the proper weight to be given to his treating sources. The ALJ gave "little weight" to three of Plaintiff's treating sources and, in contrast, gave greater

weight to the Department of Disability Services ("DDS") doctors who reviewed Plaintiff's medical records. In the court's view, there was no error.

Plaintiff contends that the ALJ should have adopted two of his treating physicians' opinions, whereas the Commissioner argues that the ALJ properly accorded them little weight. Dr. Louis Strauss diagnosed Plaintiff with chronic low back pain after noting tenderness to palpation and, on one occasion, reduced reflexes in his knees. (Administrative Record ("A.R.") 455, 456, 559, 616.) After treating Plaintiff's pain for a year, Dr. Strauss opined that, in essence, Plaintiff did not have the residual functioning capacity to work. (A.R. 509-513.) Dr. Aaron Leavitt, the second of the two phsyicians, signed on to the report of Susan Schwartz, a mental health counselor who treated Plaintiff for several months. The report indicated that Plaintiff was markedly limited in matters of attention, focus and professionalism and moderately limited in, among other areas, social behavior and following routines. Ms. Schwartz assigned Plaintiff a Global Assessment Functioning ("GAF") score of 53.[1] (A.R. 674-676.)

Plaintiff argues that the ALJ should have given these treating physicians' opinions controlling weight because they were both consistent with the record and based on objective evidence. This argument, however, misunderstands the nature of

---

[1] A GAF score between 51 and 60 reflects moderate symptoms or moderate difficulty in social, occupation or school functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psych. Assoc., 4th ed., 2000). As the Commissioner points out, the newest version of the DSM published on May 18, 2013, no longer employs the GAF score, yet the Social Security Administration ("SSA") will continue to receive into evidence and consider GAF scores. SSA Administrative Memorandum 13066 (July 22, 2013); *see Hall v. Colvin*, -- F.Supp.2d --, 2014 WL 1832184, at *8 (D. R.I. May 8, 2014) (discussing the Memorandum and finding particular GAF scores to be relevant but non-determinative).

3

the inquiry to be made by the court at this stage of the proceedings. Under the substantial evidence standard, however reasonable Plaintiff's desired outcome may be, he may only prevail if he also persuades the court that the administrative law judge's conclusion was not. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). In effect, the court must review the totality of the evidentiary record to see if a reasonable mind could find it adequate to support the administrative law judge's decision. *See Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

An administrative law judge may only give controlling weight to a physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (emphasis added). Conversely, an administrative law judge must give less weight to a treating source's opinion that does not meet those requirements, but still must provide "good reasons" for the ultimate weight determination. *Id*. *See also Guyton v. Apfel*, 20 F.Supp.2d 156, 167 (D. Mass. 1998) (listing factors to consider).

Here, the ALJ found Plaintiff to be impaired by "facet arthropathy with back pain, headaches, trochanteric bursitis, anxiety, [and] depression." (A.R. 16.) These impairments came to light after Plaintiff, who was 32 at the time of the hearing, was rear-ended in an automobile accident. (A.R. 18.) After the accident, Plaintiff went to the emergency room for back and neck pain where he was diagnosed with a sprain and strain and prescribed painkillers. (A.R. 299.) Over the next two years he saw several specialists for self-reported pain, cognitive, and psychological impairments. (*See* (A.R. 327) (listing nine of Plaintiff's subjective complaints: headache pain from 5 to 9 on a

4

scale of 1-10; focus; organization; memory; dizziness; language problems; anxiety, depression, and irritability; emotional distress, and ongoing physical pain).)  The difficulty with Plaintiff's argument, however, as manifest in almost all aspects of this record, is the fact that the severity of his reported ailments could not be objectively verified.

To be sure, objective testing indicates the *existence* of the impairments at issue, but Plaintiff has pointed to no objective source consistently supporting the *severity* reflected in the physicians' opinions.  If anything, the record shows "minimal findings on physical exams" with respect to Plaintiff's pain and a "negative MRI."  (A.R. 21.)  Moreover, the support for Plaintiff's psychological complaints is inconsistent.  For example, the record reflects one GAF score of 35 and several scores of at or above 50. (A.R. 505, 538, 671.)  The ALJ, therefore, had more than sufficient grounds to decline to give the physicians' opinions controlling weight.  *See Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (administrative law judge could decline to give controlling weight to physicians' opinions based "excessively" on claimant's subjective complaints rather than on objective medical findings).

Of course, the decision to give a treating source's opinion less than controlling weight does not end the matter.  The administrative law judge must nevertheless assign that opinion a measure of weight and provide reasons for doing so.  *See Guyton*, 20 F.Supp.2d at 167.  "'This requirement is not simply a formality . . . [i]t is intended to let claimants understand the disposition of their cases, particularly . . . where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that he is not.'"  *McCumber v.*

5

*Colvin*, 2014 WL 4804750, at *8 (D. Mass. Sept. 25, 2014) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)).

Here, the ALJ accorded Dr. Strauss's opinions little weight because they were "based directly on the claimant's subjective report of his symptoms, not on the objective medical records*.*" (A.R. 21.) The administrative record bears this out. While the ALJ's explanation arguably could have been more thorough, it is nonetheless sufficient. *Mason v. Astrue*, 2013 WL 2247583, *4 (D. Mass. Feb. 1, 2013) ("An administrative law judge can grant little weight to a doctor's opinion that is based mainly on subjective complaints") (citing *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)).

As for Dr. Leavitt, the ALJ gave little weight to his psychiatric report, (adopting Ms. Schwartz's findings), because he found it both internally and externally inconsistent. Internally, the ALJ concluded that the report, which otherwise describes marked limitations, did not align with its own GAF score, 53, indicating only moderate limitations. Granted, this superficial discrepancy, alone, would be an insufficient basis for according a treating source's opinion little weight, *see Hall*, 2014 WL1832184, at *8; *Martinez v. Colvin*, 2014 WL 3735889, at *3 (D. Mass. July 11, 2014), and may in fact be the very reason why the American Psychiatric Association has moved away from the GAF system. *See supra* fn.1. But the other incongruity identified by the ALJ does provide sufficient evidence of inconsistency to support his decision, namely, Ms. Schwartz's treatment notes that Plaintiff was "happy" with his progress on becoming less isolated and actively trying to become more social. (*See, e.g.*, A.R. 669.) As a result, the ALJ could properly choose to accord the psychiatric report, which Ms. Schwartz drafted, little

6

weight.  *See Arruda v. Barnhart*, 314 F.Supp.2d 52, 72 (D. Mass. 2004) (appropriate to "downplay" treating doctor's assessment when inconsistent with other evidence).

   *2.  RFC Determination*

Plaintiff also argues that the ALJ, who did not expressly adopt or assign weight to any other medical opinion in the record, could not have had any basis for his RFC determination.  The argument is well-made but unavailing.  A review of the record makes clear that the ALJ did not weave his RFC assessment out of whole cloth.  As the Commissioner argues, the ALJ's analysis is based in large part on the opinions of the state consulting physicians.  To be sure, Plaintiff rejoins that the Commissioner's *post hoc* reasoning is impermissible, *see, e.g., Lyons ex. rel. X.M.K.L. v. Astrue*, 2012 WL 5899326, *6 (D. Mass. Nov. 26, 2012), and that, in any event, the state consultants' opinions should have received little weight.  The court is not persuaded.

First, although it would have been better for the ALJ to have expressly stated as much, the court need not resort to speculation to conclude that he gave great weight to the state physicians.  Second, having accorded little weight to the treating physicians for the reasons described above, the ALJ was entitled to rely on the opinions of non-examining physicians to the extent they were consistent with the evidentiary record. *See Arroyo v. Sec'y of Health and Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991).  The ALJ, in effect, came to that conclusion here.[2]

---

[2]Contrary to Plaintiff's assertion, the court does not perceive any aggravation of his impairments, at least not by any objective measure, after the state agency physicians' record reviews, which would otherwise implicate SSR 96-6p and necessitate a further record review.  *See Abubakar v. Astrue*, 2012 WL 957623, at *13 (D. Mass. Mar. 21, 2012) (administrative law judge can rely on the opinions of record reviewers who did not review the entire record, where there was no indication that plaintiff's health worsened

As will be explained further below, the ALJ also reasonably found that Plaintiff was not entirely credible. That finding adds strength to the ALJ's conclusion that Plaintiff's impairments were not as severe as he and his treating physicians made them out to be but, rather, were more in line with the portions of the consulting physicians' opinions relied on by the ALJ. *See Berrios-Lopez v. Sec'y of Health and Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991) (administrative law judge may rely on non-examining physicians' opinions that are more consistent with the record than treating physicians' opinions).

*B. Credibility Assessment*

The ALJ preliminarily found that Plaintiff's "medical signs and laboratory findings" could be reasonably expected to result in his symptoms. *See* Social Security Ruling ("SSR") 96-7p. But, after inquiring into the six "*Avery*" factors at the hearing, he decided not to fully credit Plaintiff's testimony bearing on the "intensity, persistence, and functionally limiting effects" of his pain and instead deemed Plaintiff's statements "somewhat credible, but not to the extent alleged." (A.R. 21.) That determination must be affirmed if a reasonable mind could analyze the record in light of the *Avery* factors and reach the same result. *See Avery v. Sec. of HHS*, 797 F.2d 19, 29 (1st Cir. 1986)*; Guyton*, 20 F.Supp.2d at 166.

Plaintiff, to be sure, argues that his statements concerning the severity of his impairments were *fully* credible. Unfortunately for Plaintiff's cause, the court has little difficulty concluding that the record adequately supports the ALJ's decision. First, the

---

during the intervening time).

ALJ detailed the extent of Plaintiff's physical and mental symptoms, functional limitations, medications, and daily activities, as required by *Avery*, and the court has little reason to challenge his summary of the record.

Second, the two reasons which caused the ALJ to find Plaintiff less than credible pass muster, *i.e.*, (1) the disparity between the objective evidence and Plaintiff's subjective complaints and (2) the fact that Plaintiff could still "manage a fairly full range of daily activities." Standing alone, of course, each reason might prove to be insufficient. *See Valiquette v. Astrue*, 498 F.Supp.2d 424, 433 (D. Mass. 2007) ("[S]ome dissonance between the objective medical assessments and the plaintiff's description of the level of pain he was experiencing . . . merely poses the question of the credibility of his subjective complaints, it does not answer it."); *Teixeira v. Astrue*, 755 F.Supp.2d 340, 347 (D. Mass. 2010) ("evidence of daily activities can be used to support a negative credibility finding," but performance of those activities should not be "equated to an ability to participate effectively in the workforce"). But here, the ALJ's reasons, when taken together, are more than adequate.

As it turns out, the ALJ also found that, even though Plaintiff's car accident -- which supposedly precipitated his disability -- occurred in December 2009, he did not stop working until February 2009 and, then, only because he was laid off. (A.R. 20.) Tellingly, Plaintiff also sought similar employment for some period of time afterwards. (Id.) These additional facts support an inference that Plaintiff was not as impaired as he purported to be and, in combination with the extent of his daily activities and the disparity between the objective findings and subjective complaints, provided ample justification for the ALJ's adverse credibility finding.

*C. VE Testimony*

The ALJ asked the VE whether jobs existed in the national economy for "an individual with [Plaintiff's] age, education, work experience, and [RFC]." Now, Plaintiff argues, the ALJ should have included in the question as well a limitation on "concentration, persistence or pace" to account for that aspect of his impairments which was ultimately memorialized in the decision. The court disagrees. Granted, the ALJ ultimately found that Plaintiff was moderately limited with regard to "concentration, persistence or pace," but that finding was only for purposes of determining whether Plaintiff met a "listing" at Step 3 of the five-step sequential analysis. (A.R. 16-17.) *See* 20 C.F.R. §§ 404.1520a(c); 416.920a(c). In the very next paragraph of his decision, the ALJ cautioned that the limitations identified were "not a [RFC] assessment" but, rather, that the "RFC assessment reflects the . . . limitation[s] . . . found [at steps 2 and 3]." (A.R. 17.)

In any event, the RFC assessment did limit Plaintiff to unskilled work with things rather than people. Moreover, the ALJ's second hypothetical included the limitation that Plaintiff work in the "lower one third of the stress continuum," *i.e.*, no independent decision-making required and few changes in routine. (A.R. 52-53.) These descriptions, in the court's opinion, reflected the severity of impairments recognized at Steps 2 and 3 and, accordingly, yielded sufficient vocational evidence to support the ALJ's decision to deny benefits. *See Dubriel v. Astrue*, 2009 WL 1938986, *5 (D. Me. July 6, 2009) ("[T]o the extent the plaintiff complains that the [ALJ] found him, at Step 2, moderately limited in concentration, persistence, and pace but then failed at Step 4 to incorporate any such limitation into his RFC finding, he is mistaken," because the ALJ

10

limited the plaintiff "to the performance of unskilled, low-stress work").

## II. CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings is DENIED and the Commissioner's motion to affirm is ALLOWED.

IT IS SO ORDERED.

                                                /s/   Kenneth P. Neiman
                                                KENNETH P. NEIMAN
                                                U.S. Magistrate Judge

October 31, 2014